**STEIN PRINTING COMPANY, a partnership, Plaintiffs,**

v.

**ATLANTA TYPOGRAPHICAL UNION NO. 48, Defendant.**

**Civ. A. No. 15362.**

United States District Court,
N. D. Georgia,
Atlanta Division.
July 19, 1971.

1969. Pub.L. 91–172, Title II, § 213(b), 83 Stat. 572 (1969).

William W. Alexander, Jr., Fisher & Phillips, Atlanta, Ga., for plaintiff.

J. R. Goldthwaite, Jr., Adair, Goldthwaite, Stanford & Daniel, Atlanta, Ga., for defendant.

## ORDER

RICHARD C. FREEMAN, District Judge.

This case was removed to this court by defendant from the Superior Court of Fulton County on the basis of this court's original jurisdiction over contracts between employers and labor unions affecting commerce. 29 U.S.C. § 185. On July 12, 1971, defendant filed a motion to: (1) dissolve a temporary restraining order issued by the Fulton County Superior Court against the defendant union's picketing of the plaintiff; and (2) to dismiss the complaint. On July 16, 1971, after both sides had submitted briefs, this court heard oral argument on the motion. The following are the court's findings of fact and conclusions of law.

## FINDINGS OF FACT

Plaintiff, Stein Printing Company, is a partnership which conducts a printing operation in Fulton County, Georgia. Defendant, Atlanta Typographical Union No. 48, is a union with offices in DeKalb County, Georgia,[1] which represents certain of plaintiff's employees. Plaintiff and defendant union are parties to a presently effective collective bargaining agreement[2] which covers employees in plaintiff's composing room. This labor contract provides in Section 24 that:

The operation, authority, and control of each composing room shall be vested exclusively in the office through its representative, the foreman, *who shall be a member of the Union* (emphasis added) * * *

The foreman of plaintiff's composing room, Mike Karakos, permitted his union membership to lapse on June 10, 1971. Discussions were held on June 14, 1971 and thereafter between the plaintiff and the defendant in which the defendant requested that plaintiff comply with Section 24 of the contract by placing a union member in the position of foreman. This request was based on the contention that Karakos was no longer eligible under the contract to hold the position of foreman. These discussions concluded with plaintiff's refusing to replace Karakos as foreman and plaintiff's taking the position that: (1) the union foreman clause (Section 24) was void under Georgia's right-to-work

[1.] In the state court hearing defendant argued that proper venue lay in DeKalb County rather than Fulton County. However, the Fulton County Superior Court held that it had jurisdiction of the defendant as an unincorporated association doing business in Fulton County under Ga.Code Ann. § 3–120, which states:

3–120. Unincorporated association suable in pending or future actions; venue.—Such organization or association shall be suable in any action now pending, or any cause of action now existing or hereafter arising. Such action may be maintained in any county where such organization or association does business or has in existence a branch or local organization. (Acts 1959, pp. 44, 45)

[2.] This labor contract between the Union Employing Printers of Atlanta, of which plaintiff is a member, and the Atlanta Typographical Union No. 48 expires August 15, 1971.

laws, Ga.Code Ann. §§ 54–902, 904, and 905[3]; and (2) Section 24 was in conflict with Article I, Section 1(a)[4] of the contract.

On or about June 17, 1971, ten composing room employees were discharged by plaintiff for refusing to accept directions or take orders from foreman Karakos concerning the performance of their work. A few hours later one of the ten discharged employees was reinstated upon his agreement to take orders from foreman Karakos. The remaining nine discharged employees were notified in writing on June 22 and June 24, 1971, that they would be reinstated if they would report to work by June 28, 1971, and if they would agree to follow the orders of foreman Karakos. No other discharges occurred because orders were relayed to the remaining composing room employees through an assistant foreman who is a union member. This reinstatement offer was rejected by the defendant union. On June 25, 1971, following a vote by union members in favor of reinstatement of the nine discharged employees and a refusal of the plaintiff to do so, the remaining composing room employees represented by defendant union walked off their jobs and established a picket line with signs asserting that Atlanta Typographical Union No. 48 was "locked out" by plaintiff printing company.

On July 7, 1971, plaintiff filed a complaint in Fulton County Superior Court on two counts seeking an injunction against the striking and picketing of the defendant union and its members. Count I asserts that the foreman clause (Section 24 of the labor contract) is in violation of Georgia law and hence void. Count II asserts that as a result of the arbitration provisions [5] of the labor contract, there is an implied "no strike"

---

3. These code sections state:

§ 54–902. Membership in labor organization as condition of employment.—No individual shall be required as a condition of employment, or of continuance of employment to be or remain a member or an affiliate of a labor organization, or to resign from or to refrain from membership in or affiliation with a labor organization. (Acts 1947, pp. 616, 618)

§ 54–904. Contracts requiring membership in, or payments to, labor organizations as contrary to public policy.— Any provision in a contract between an employer and a labor organization which requires as a condition of employment, or of continuance of employment, that any individual be or remain a member or an affiliate of a labor organization, or that any individual pay any fee, assessment, or other sum of money whatsoever, to a labor organization, is hereby declared to be contrary to the public policy of this State, and any such provision in any such contract heretofore or hereafter made shall be absolutely void. (Acts 1947, pp. 616, 618)

§ 54–905. Unlawfulness of contracts requiring membership in, or payments to, labor organizations as a condition of employment.—It shall be unlawful for any employer to contract with any labor organization, and for any labor organization to contract with any employer, so as to make it a condition of employment of any individual, or of

continuance of such employment, that such individual be or remain a member of a labor organization, or that such individual pay any fee, assessment, or other sum of money whatsoever, to a labor organization. (Acts 1947, pp. 616, 618)

4. Article I, Section 1(a) of the contract states:

Membership or non-membership in a labor organization shall not be a factor in the hiring of any journeyman or apprentice or in the tenure of any condition of his employment.

5. Section 27(a) of the labor contract states:

A standing committee of two representatives appointed by the Employers, and a like committee of two representatives appointed by the Union, shall be maintained; and in case of a vacancy, absence or refusal of either of such representatives to act, another shall be appointed to his place. *To this committee shall be referred all disputes which may arise as to the scale of prices set forth in this contract, the construction to be placed upon any clause of the agreement, alleged violations thereof, which cannot be settled otherwise,* and such joint committee shall meet when any question or difference shall have been referred to it for decision by the executive officers of either party to the agreement. This

clause which the defendant union is breaching. The second count further asserts that plaintiff offers to arbitrate the questions of (1) the propriety of its refusal to discontinue the employment of Mike Karakos as foreman; and (2) the discharges of the employees who refused to obey foreman Karakos' orders. On July 7, 1971, the Fulton County Superior Court entered a temporary restraining order restraining defendant, its members, agents or servants and any persons acting for defendant, from: (1) picketing plaintiff's place of business or ordering or directing same to be done; and (2) directing or encouraging its members or other persons not to take or follow the orders of foreman Karakos regularly made by him in connection with his duties in plaintiff's composing rooms. On July 9, 1971, the case was removed to this court.

At the hearing before this court plaintiff's General Manager, James Alford, testified that: prior to the present dispute forty-two (42) men were employed in the composing rooms; thirty-four (34) men including the nine (9) discharged went out on strike; beginning the week of June 17, 1971, until the week of June 28, 1971, eighteen (18) new persons were hired to replace the striking workers; due to the nature of the commercial printing business, there is normally a considerable amount of daily overtime to be worked in the composing room; the amount of this overtime fluctuates from day to day; and some of the striking workers have secured other employment.

## CONCLUSIONS OF LAW

■ Plaintiff and defendant are residents of and doing business within the Northern District of Georgia. The operations of plaintiff and defendant affect interstate commerce. The action is a labor dispute involving a collective bargaining agreement. Therefore, this court has jurisdiction of the parties and the subject matter. 28 U.S.C. § 1447(a) and (b); 29 U.S.C. § 185; General Electric Co. v. Local Union 191, International Union of Electrical, etc., Workers, 413 F.2d 964 (5th Cir. 1969); cert. granted, 398 U.S. 436, 90 S.Ct. 1883, 26 L.Ed.2d 384 (1970), on remand, 443 F. 2d 608 (5th Cir. 1971); Avco Corp. v. Aero Lodge No. 735, IAM, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968).

■ To guide the district courts in determining whether to grant injunctive relief, the Supreme Court in Boys Markets v. Retail Clerk's Credit Union, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970), adopted the principles set forth in the dissenting opinion of Sinclair Refining Co. v. Atkinson, 370 U.S. 195, 82 S.Ct. 1328, 8 L.Ed.2d 440 (1962).

"A district court entertaining an action under § 301 may not grant injunctive relief against concerted activity unless and until it decides that the case is one in which an injunction would be appropriate despite the Norris-La Guardia Act. When a strike is sought to be enjoined because it is over a grievance which both parties are contractually bound to arbitrate, the District Court may issue no in-

committee shall not have authority to create new conditions or add new provisions to this agreement. It has no authority with regard to interim openings. If no decision is reached within five (5) days, then a fifth member shall be added to the committee. Such fifth member shall be selected from a list of seven arbiters supplied by the Director of the Federal Mediation and Conciliation Service. The Employer's Representatives and the Representatives of the Union shall in order determined by lot, each have the right to strike

alternatively the names of persons from the list and the fifth member of the committee shall be the last name remaining on said list. The decision of this committee shall be final and binding. Provided, that local Union laws not affecting wages, hours or working conditions and the General Laws of the International Typographical Union shall not be subject to arbitration. *The conditions prevailing prior to any such dispute shall be maintained until decided as above provided* (emphasis added).

junctive order until it first holds that the contract *does* have that effect; and the employer should be ordered to arbitrate as a condition of his obtaining an injunction against the strike. Beyond this, the District Court must, of course, consider whether issuance of an injunction would be warranted under ordinary principles of equity— whether breaches are occurring and will continue, or have been threatened and will be committed; whether they have caused or will cause irreparable injury to the employer; and whether the employer will suffer more from the denial of an injunction than will the union from its issuance." 370 U. S. at 228, 82 S.Ct at 1346. (Emphasis in original.) 398 U.S. at 254, 90 S.Ct. at 1594.

In keeping with these guidelines this court finds that the language, "[t]o this committee shall be referred all disputes which may arise as to the scale of prices set forth in this contract, the construction to be placed upon any clause of the agreement, alleged violations thereof, which cannot be settled otherwise * * *,"[6] used in the labor contract gives rise to an implied "no strike" provision which contractually binds plaintiff and defendant to arbitrate their dispute. *See* Local 174, Teamsters, etc. v. Lucas Four Co., 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962). This court also finds that defendants' actions, of which plaintiff complains, are calculated to put plaintiff out of business if persisted in over a substantial period of time and that they were causing plaintiff considerable damage prior to the issuance of the state court's temporary restraining order. Therefore, under ordinary principles of equity, this is a proper case for injunctive relief since the plaintiff-employer would suffer more from a denial of an injunction than the defendant-union would from its issuance.

The testimony of plaintiff's General Manager, Mr. Alford, as to the considerable amount of daily overtime available in the composing room and the provision in the arbitration clause that "conditions prevailing prior to any such dispute shall be maintained until decided * * *"[7] lead this court to conclude that even though plaintiff has hired eighteen (18) new employees for the composing room, there should be enough work available so that plaintiff will not be unduly burdened by reinstating all discharged and striking employees, who wish to return to work, pending the results of arbitration. Should this become an undue burden on plaintiff because of a shortage of work or any other reason, plaintiff may, at such time, seek appropriate relief from this court. This court, however, makes no finding as to the propriety of awarding "back-pay" since it feels that this issue is strictly within the purview of the arbitrator. This court also feels that the reinstated employees should follow the orders and instructions directly given by plaintiff's foreman, Mike Karakos, pending the results of arbitration.

Since the order issued by the Fulton County Superior Court remains in full force and effect until dissolved or modified by this court, 28 U.S.C. § 1450, that order is hereby dissolved. Accordingly, defendant's motion to: (1) dissolve the temporary restraining order is GRANTED; (2) dismiss the complaint is DENIED. This court hereby ORDERS that:

(1) the parties are enjoined and directed forthwith to proceed to arbitrate any underlying issues involved in this dispute in accordance with the procedures set forth in the contract;

(2) the defendant and its members are hereby restrained and enjoined from continuing any work stoppage in effect because of any issue related to this dispute;

(3) the defendant and its members are hereby enjoined from picketing and from engaging in any other coercive activities directed against plaintiff or its customers or employees in furtherance

---

6. See note 5 *supra.*

7. See note 5 *supra.*

of the within dispute, including refusal to work a reasonable and normal amount of overtime, pending arbitration;

(4) the plaintiff is enjoined and directed to reinstate to employment, pending arbitration, all discharged and striking composing room employees who wish to return to work, without regard to the issue of back pay;

(5) the defendant and its members are hereby restrained and enjoined, pending arbitration, from refusing to accept or follow directly orders of plaintiff's foreman, Mike Karakos;

(6) inasmuch as both parties are enjoined by this Order, neither party is required to make an injunction bond and the bond heretofore filed is hereby released without liability;

(7) the court retains jurisdiction (a) to enter such orders as shall be necessary to effectuate this Order pending resolution of the underlying dispute through arbitration, and (b) to take such action, if any, following arbitration as may be appropriate or authorized by law.

It is so ordered.